IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| | |
|---|---|
| CONNIE HOWELL, <br> Plaintiff, <br> -v- <br> KELLY SERVICES, INC. AND INTERNATIONAL BUSINESS MACHINES CORP., <br> Defendants. | Civil No. 1:12-cv-821 <br><br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

This matter comes before the Court on defendant Kelly Services, Inc.'s ("Kelly Services") motion to enforce a settlement agreement reached with the plaintiff. (Dkt. No. 97). Both Kelly Services and defendant International Business Machines Corporation ("IBM") filed briefs in support of the motion to enforce the agreement. (Dkt. Nos. 98, 100). Plaintiff ("plaintiff" or "Howell") opposed the motion to enforce the settlement, and defendant IBM replied. (Dkt. Nos. 101, 102). Plaintiff also filed a motion for breach of contract against her former attorneys and a motion to appoint counsel. (Dkt. Nos. 95, 96). The Court heard oral argument on March 6, 2015.

### I. BACKGROUND

On December 6, 2013, Howell filed the operative complaint against Kelly Services and IBM alleging gender discrimination and retaliation in violation of Title VII. (Dkt. No. 79). Howell was scheduled to be deposed in connection with this action on September 10, 2014. Shortly after the deposition began, an issue arose as to whether Howell was competent to testify

1

and the deposition was suspended to determine whether she had a legal guardian. Ultimately, the lawyers for both parties determined that Howell was competent to testify and her deposition was rescheduled for September 12, 2014. *See* Def.'s Mem. in Supp. of Mot. to Enforce Settlement Agreement, 2 (Dkt. No. 100).

The next day, September 11, 2014, counsel for the parties deposed other witnesses and also engaged in settlement negotiations. *See* Def.'s Mot. to Enforce Settlement Agreement at ¶ 4 (Dkt. No. 97). Following the settlement discussions, defendants' counsel prepared a written settlement agreement and sent the document via email to Joshua Erlich, plaintiff's attorney at the time. *See* Ex. 2 to Mem. in Supp. (Dkt. No. 100-2). Howell and Erlich met that evening to discuss the agreement prepared by the defendants' counsel. She and Erlich signed the settlement agreement and Erlich emailed the signed docment to the defendants at 9:13 p.m. *See* Ex. 3 to Mem. in Supp. (Dkt. No. 100-3). Because plaintiff signed the settlement agreement and Erlich signed a stipulation of dismissal, defendants' counsel agreed to cancel plaintiff's rescheduled deposition. *See* Joint Stipulation of Dismissal (Dkt. No. 100-1 at 10-11).

Howell contends that she actually called Erlich later that evening in order to revoke her acceptance and Erlich never called her back. *See* Pl.'s Notice Regarding Settlement at 1 (Dkt. No. 93). On September 15, 2014, she emailed Erlich asking him to "cancel" the signed settlement agreement and "[d]isregard [the] paper work [sic] for the order dismissing the case in its entirety." *Id.* at 3. Erlich responded that the case had been settled "pursuant to [her] instructions and based upon [her] signature." *Id.* He also wrote that, pursuant to the agreement, Howell could only revoke the agreement with respect to potential age discrimination claims

2

under the Age Discrimination in Employment Act.[1] However, this would have no impact on the settlement of her lawsuit, which does not raise age discrimination claims.

In a letter dated September 17, 2014, Erlich informed IBM's attorney Matthew Nieman and Kelly Services' attorney Steven M. Potter that Howell wished to revoke her execution of the settlement agreement. (Dkt. No. 100-4). Erlich wrote that he and Howell presumed that formation of the contract had not yet been completed because they had not yet received a countersigned agreement. *Id.* Erlich also noted that he and his associate Benjamin Owen would be withdrawing from representation of Howell. *Id.* Steven Purdy, an attorney for IBM, signed the settlement agreement that same day on behalf of IBM. It is not apparent from the record whether Purdy signed the agreement before or after receiving notice of Erlich's letter communicating Howell's desire to cancel the contract.

On September 18, 2014, during the final pretrial conference in chambers, counsel for the defendants presented a signed stipulation of dismissal to the Court. At that time, Howell claimed that she lacked capacity to sign the agreement and that she had signed the agreement under duress from Erlich.[2] Howell wrote a letter dated September 19, 2014 to Nieman, acknowledging her execution of the settlement agreement on September 11. This letter states that she "at no time revoked [her] acceptance" of the settlement agreement and reaffirmed her acceptance of

---

[1] The agreement contains a provision allowing Howell to revoke the settlement with respect to potential age discrimination claims within seven days of executing the agreement. *See* Confidential General Release and Settlement Agreement at § 6 (Dkt. No. 100-1). The contract specifically allocates a sum of $500.00 to the waiver of the ADEA claims.

[2] Howell had originally argued in opposition to the motion to enforce that Erlich coerced her into signing the agreement and that he lied to her by indicating that she had 15 days after signing the contract to revoke it. *See* Pl.'s Opp'n to Mem. in Supp. of Mot. to Enforce Settlement Agreement at 1-2 (Dkt. No. 101). The Court granted plaintiff two continuances to present evidence of incompetence and duress. Plaintiff received leave of court to issue subpoenas to her former attorneys and county health workers who were familiar with her health conditions. However, at the hearing on March 6, 2015, Howell's guardian *ad litem* indicated that she had withdrawn the subpoenas of the county health workers and evidently did not object to the absence of her former attorneys. Plaintiff's guardian further informed the Court that plaintiff was competent when she signed the agreement and at the time of the hearing on March 6. Plaintiff therefore withdrew her arguments relating to competence and duress and intended to rely solely on the legal argument that she had validly revoked the contract.

that agreement. Notice Regarding Settlement at 8 (Dkt. No. 93). The letter also requested payment of the money owed to her pursuant to Section 4 of the settlement agreement. *Id.*

## II. DISCUSSION

Plaintiff seeks to cancel the settlement agreement on the ground that no valid contract was formed because she validly revoked her offer to settle the case. Defendants argue that the settlement agreement is a valid, enforceable contract.

The United States Court of Appeals for the Fourth Circuit has instructed district courts to engage in two inquiries when asked to enforce a settlement agreement. "To enforce a settlement agreement under its inherent equity power, the district court '(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.' " *See Campbell v. Adkisson, Sherbert & Assoc.*, 546 F. App'x 146, 152 (4th Cir. 2013) (quoting *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002) (further citation omitted)). When presented with a factual dispute regarding the existence of an agreement, the authority of attorneys to enter into the agreement, or the agreement's terms, the court "must conduct a plenary evidentiary hearing in order to resolve that dispute" and "make findings on the issues in dispute." *Hensley*, 277 F.3d at 541 (internal citations and quotation marks omitted). The parties in the instant action do not dispute the facts. Rather, they dispute the conclusions to be drawn from the undisputed facts.

### A. Whether the parties have entered an agreement

Under Virginia law, a settlement agreement is a matter of contract "subject to the general principles of contract interpretation." *See Power Servs., Inc. v. MCI Constructors, Inc.*, 3 F. App'x 190, 192 (4th Cir. 2001) (quoting *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991)). The essential elements of a contract are an offer, acceptance, and consideration. *See*

*Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995). "To prove a contract's existence, all of the essential elements must be proven." *Dean v. Morris*, 287 Va. 531, 536 (2014).

A contract is formed when the offeree communicates acceptance to the offeror. *See Levy v. Beach Inv. Corp.*, 212 Va. 19, 20 (1971). "An offer, which is usually but not always a promise, is a manifestation of a willingness to enter into a bargain." *Chang v. First Colonial Sav. Bank*, 242 Va. 388, 392 (1991) (citing RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981)). "The offer identifies the bargained for exchange, and creates a power of acceptance in the offeree." *Id.* (citations omitted). "The most basic principle of contract law is that when one party makes an offer that is clear, definite, and explicit, and leaves nothing open for negotiation, acceptance of that offer by the other party will complete the contract." *Judicial Inquiry and Review Comm'n of Va. v. Elliott*, 272 Va. 97, 119 (2006) (citing *Chang*, 242 Va. at 391). "In deciding whether a settlement agreement has been reached, the Court looks to the objectively manifested intentions of the parties." *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162 (4th Cir. 1991) (citations omitted). "Once a competent party makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." *Snyder-Falkinham*, 249 Va. at 385 (citation omitted).

Here, the defendants made a clear, definite, and explicit offer leaving nothing open for negotiation. The written settlement agreement states that defendants agree to pay plaintiff a sum totaling $10,000, including attorney's fees, in exchange for her release of all her claims against the defendants. All that was required to complete the contract was plaintiff's communication of her acceptance. Howell admits that she signed the agreement with Erlich, her former attorney. Plaintiff's act of signing the agreement constituted an objective manifestation of her intent to

enter into a contract with the defendants. Plaintiff therefore unambiguously accepted the defendant's offer to settle the case when she signed the settlement agreement and her attorney emailed the signed agreement to defense counsel. *See Moore*, 936 F.2d at 163-64 ("The general rule is that counsel of record have the authority to settle litigation on behalf of their client") (citation omitted).

Effective revocation requires communication of the revocation before acceptance of the offer. *See Chittum v. Potter*, 216 Va. 463, 468 (1975) ("An offer becomes inoperative if it is not accepted before it has been withdrawn") (citation omitted). Here, plaintiff did not attempt to revoke the contract until after she signed it. Contrary to plaintiff's assertions, the defendants were not required to sign the contract in order for the agreement to be enforceable. The undisputed objective evidence indicates that plaintiff and defendants intended to enter into a settlement agreement and did enter into such an agreement. At most, plaintiff has revoked her settlement with respect to any potential ADEA claims pursuant to § 6 of the contract. However, because the instant action does not include any age discrimination claims, she has not revoked her agreement to settle the claims in the instant case.

Plaintiff, through her guardian *ad litem*, argues that she was the offeror, and she validly revoked the offer before the defendants accepted it. In support of this argument, Howell points to email correspondence between her counsel and defendants' counsel dated September 11, 2014. In an email sent at 4:31 p.m., counsel for Kelly Services[3] wrote to Erlich that "Kelly and IBM have authority to accept your settlement demand of $10,000. All that remains at this point is to obtain your client's signature on the Release. I look forward to hearing from you as soon as

---

[3] The email was sent from an individual named Misty Crawford, whose email address indicates an affiliation with the Potter, DeAgostino, O'Dea & Patterson law firm. Steven Michael Potter, a member of that firm, was allowed to appear *pro hac vice* in this case on behalf of Kelly Services. (Dkt. No 41). Potter was copied on the email and appears to have signed his name to the email.

6

possible regarding Ms. Howell's execution of the Settlement Agreement." Ex. 2 to Mem. in Supp. of Mot. to Enforce (Dkt. No. 100-2). Matthew Nieman and Joel Borovsky, lawyers for IBM, also received the email. Viewing the entire context of the email correspondence, the Court disagrees with plaintiff's interpretation of the facts.[4] In the email sent directly before the email cited by plaintiffs, Borovsky wrote that defendants' counsel had "prepared the attached contingent settlement agreement and release" for Erlich to review with Howell, the "only contingency" being final approval of the settlement amount. *Id.* However, even assuming *arguendo* that plaintiff was the offeror, a valid contract was formed when defendants' counsel responded via email that they accepted plaintiff's "settlement demand." *Id.* Thus, even under plaintiff's interpretation of the facts, a valid contract was formed before plaintiff attempted to revoke it.[5]

B. Whether the terms of the agreement are enforceable

Having determined that the parties formed a valid contract, the Court now considers the terms of the settlement agreement. To enforce a settlement agreement, a court must determine that there are sufficient facts to resolve any disputes over material terms and that all material agreed-upon terms are sufficiently definite to enable the court to give them an exact meaning. *See Hensley*, 277 F.3d at 540-41; *see also Intersections, Inc. v. Loomis*, No. 1:09cv597, 2010

---

[4] Moreover, the contract itself contains language indicating that the defendants were the offerors. Section 6 of the contract recites the following: "Howell acknowledges that she was given sufficient time in which to consider this Agreement." *See* Confidential General Release and Settlement Agreement at § 6 (Dkt. No. 100-1). The agreement further states in bold, capital letters that Howell has "UP TO TWENTY-ONE (21) DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE AND HAS BEEN ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT AND GENERAL RELEASE." *Id.* at 6. This language is inconsistent with the assertion that Howell was the offeror.

[5] Howell's own submissions to this Court also disclose that she sent Nieman, IBM's lawyer, a letter dated September 19, 2014 requesting payment of the money owed her pursuant to the settlement agreement. The letter reaffirms the settlement agreement and states that plaintiff has not revoked her acceptance. *See* Notice Regarding Settlement at 8 (Dkt. No. 93).

WL 4623877, at *2 (E.D. Va. Nov. 3, 2010). Courts will enforce only those settlement terms on which the parties have reached agreement. *See Hensley*, 277 F.3d at 541.

The parties to the instant settlement agreement are Howell, Kelly Services, and IBM. *See* Settlement Agreement at § 1. The contract states that the parties "agree to jointly discontinue the Lawsuit with prejudice." *Id.* at § 2. Specifically, the first page of the settlement agreement contains the following language:

> In exchange for the promises contained in their Agreement, Howell hereby waives, releases and forever discharges, and agrees to the fullest extent permitted by law that she will not in any manner institute, prosecute or pursue, any and all complaints, claims, demands, suits, actions or causes of action based on any matters or issues that were raised or could have been raised in the Lawsuit or otherwise arising out of or related to Howell's employment [with Defendants].

*Id.* at § 3.

Further, the signature page of the settlement agreement states in bold, capital letters that Howell agrees to "waive, settle and release all claims she has or might have against defendants and the released parties." *Id.* at 7. In return for Howell's release of her claims, the defendants agreed to pay her a sum totaling $10,000. *Id.* at § 4. Pursuant to Section 4 of the agreement, Howell would receive a check in the amount of $6,500.00 "in full and final settlement" of her claims and her attorneys would receive a check in the amount of $3,500.00. *Id.* The defendants agreed to issue the funds upon the receipt by defendants' counsel of the executed settlement agreement signed by Howell, the stipulation of dismissal signed by her attorney, and a non-revocation letter signed by Howell. *Id.* Section 6 provides that Howell could revoke the agreement in writing with respect to "release of potential claims under the ADEA (to which the parties specifically allocate a sum of $500.00) for a period of seven (7) days following the day she executes this Agreement." *Id.* at § 6.

This settlement agreement plainly contains the material terms and the terms are sufficiently definite for the Court to ascribe them an exact meaning. The plain meaning of the contract's language is that Howell has agreed to settle and dismiss all claims she has or may have against the defendants in exchange for a monetary payment, except that she may revoke her agreement with respect to potential ADEA claims that were not raised in her lawsuit. Plaintiff evidently wishes to avoid the contract because she does not want to release all of her claims of gender discrimination and retaliation against the defendants. However, that is precisely what she agreed to do. The fact that plaintiff has second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement. *Snyder-Falkinham*, 249 Va. at 385 (citation omitted).

Plaintiff does not present any valid legal defenses to enforcement of the contract. Accordingly, the Court finds that the Confidential General Release and Settlement Agreement constitutes a valid, enforceable contract between Howell and defendants Kelly Services and IBM to settle Howell's civil action against the defendants.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that

1. The motion to enforce the settlement agreement (Dkt. No. 97) is GRANTED.

2. Plaintiff's lawsuit is DISMISSED with prejudice in accordance with Sections 2 and 4 of the settlement agreement.

3. Defendants are directed to tender the settlement funds to plaintiff and her former attorneys in accordance with Section 4 of the settlement agreement.

    4. Plaintiff's motion for breach of contract and motion to appoint counsel (Dkt. Nos. 95, 96) are DENIED as moot.[6]

    5. The Clerk is directed to mail a copy of this Order to the *pro se* plaintiff.


Date: May 1, 2015

Alexandria, Virginia

                                         /s/
                                 Liam O'Grady
                                 United States District Judge

---

[6] Additionally, plaintiff's former attorneys filed a motion to quash the subpoenas issued to them. (Dkt. No. 131). That motion is DENIED as moot.

10